**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 01-30775
Summary Calendar**

_____

**GILMORE M. NECTOUX, JR.,**

**Plaintiff-Appellant,**

**versus**

**PENNZOIL CO.; ET AL.,**

**Defendants,**

**PENNZOIL CO.; PENNZOIL PRODUCTS CO.**

**Defendants-Appellees.**

_____

**Appeal from the United States District Court
for the Western District of Louisiana
(98-CV-1717)**

_____

December 27, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Claiming retaliation and race discrimination, in violation of Title VII of the Civil Rights Act of 1964, Gilmore Nectoux contests the summary judgment granted Defendants. **AFFIRMED.**

I.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Nectoux was employed by Pennzoil from March 1976 until his termination in mid-1997. Defendants maintain they terminated Nectoux because, during a conversation with a co-worker, and in violation of company policy: Nectoux used racial epithets to describe the person(s) he suspected had reported him to management for use of profanity over a company radio; and, among other threats, stated he would "get" the person who reported him, make that person "pay", and "nail [him] to the wall".

Nectoux sued for retaliation and discrimination, in violation of Title VII; discrimination, in violation of the Age Discrimination in Employment Act (ADEA); and discrimination, in violation of the Americans with Disabilities Act (ADA). Based upon a very comprehensive opinion, summary judgment was granted Defendants on all claims. *Nectous v. Pennzoil Co.,* No. 98-1717, at 22 (W.D. La. 6 June 2001).

## II.

A summary judgment is reviewed *de novo*, applying the identical standard used by the district court. *E.g., Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.), *cert. denied*, 528 U.S. 906 (1999). Such judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c). "We view the pleadings

2

and summary judgment evidence in the light most favorable to the nonmovant."  *Stewart*, 174 F.3d at 533.

## A.

"An appellant abandons all issues not raised and argued in its *initial* brief on appeal."  *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir.) (emphasis in original), *cert. denied*, 513 U.S. 868 (1994).  As defendants note, Nectoux does not challenge the disposition of his ADEA and ADA claims.  (Nectoux does not dispute this in his reply brief.)  Accordingly, we will *not* consider those claims.

## B.

Nectoux does contest, however, the summary judgment granted on his Title VII discrimination and retaliation claims.

## 1.

Regarding the discrimination claim, the district court determined that Nectoux, who is white, had failed to establish a prima facie case, because he had provided no evidence that he was replaced by someone outside of his protected class.  *See, e.g., Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000).  At issue is whether Nectoux, whose job title was "maintenance planner", was replaced with another white employee, Don Bohannon, as stated in the affidavits of Patrick Henry and Steve Rowland.

a.

Nectoux contends he was actually replaced by Bobby Coley, who is black. He bases this contention on the affidavit of Raymond Hemrick, whose position was reliability engineer. Hemrick's affidavit makes only the conclusory statement that Coley occupied the position formerly held by Nectoux.

In contrast, the affidavits of Henry, who was custodian of the employment records, and Rowland, who was plant manager, support their conclusion that Coley did not replace Bohannon, testifying that Bohannon was placed in the position of maintenance planner, the position formerly occupied by Nectoux, while Coley was placed in the position of maintenance supervisor. Hemrick's unsupported conclusion does not create a genuine issue of material fact. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995) ("unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment").

b.

Alternatively, Nectoux contends he is not required to show he was replaced by someone outside of his protected class because Pennzoil had in place an affirmative action plan that constitutes direct evidence of discrimination. *See, e.g., Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047-48 (5th Cir. 1996) ("Generally, a

4

plaintiff proves a *prima facie* case through a four-element test that allows an inference of discrimination.  But a *prima facie* case can also be proven by direct evidence of discriminatory motive." (internal citation omitted)).  The district court did not address this direct evidence allegation.  This was because Nectoux appears to have failed to raise this point in district court.  The only mention of the affirmative action plan in Nectoux's response to the summary judgment motion is as follows:

> Plaintiff has not been provided with the defendant's Affirmative Action Plan which was first requested as part of Interrogatory and Request For Production in February 1999. Plaintiff believes if that information were made available to him, it would greatly aid his efforts to provide probative evidence of problems Pennzoil had in achieving racial diversity at the refinery.  It will help support his contention that blacks were not employed in acceptable numbers.  There was a need to increase the percentage of African-Americans in the work force.  That provides a motive for the disparate treatment favoring African-Americans as plaintiff alleges.

In addition, this paragraph appears under the heading "DISCOVERY PROBLEMS".

Assuming *arguendo* that this statement was sufficient to raise this issue in the district court, Defendants correctly point out: Nectoux did include the affirmative action plan in the trial exhibit book submitted to the court in preparation for trial; but, during the period between Nectoux's receipt of the plan in October 2000 and the court's summary judgment ruling in May 2001, Nectoux

never supplemented his opposition to summary judgment by placing this evidence before the court. Accordingly, this evidence was not in the summary judgment record; and, consequently, Nectoux cannot rely upon it on appeal. *See Muñoz v. Orr*, 200 F.3d 291, 303 (5th Cir.) (affidavit that was struck "was not before the district court and we do not consider it now as part of plaintiffs' summary judgment evidence"), *cert. denied*, 531 U.S. 812 (2000).

## 2.

Regarding his Title VII retaliation claim, Nectoux asserts that his termination was in retaliation for his alleged complaint to management in January 1997 (he was terminated several months later) that black employees, specifically a maintenance supervisor, Curtis Evans, were treated more favorably than white employees. The district court did not address this claim.

Defendants contend: Nectoux has not shown there was a causal connection between any such complaints and his termination; such a showing is necessary to establish a prima facie case of retaliation; and alternatively, even if Nectoux has established a prima facie case of retaliation, they have offered a non-discriminatory reason for his termination, and he has not shown that reason is pretextual. *See, e.g., Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407-08 (5th Cir. 1999).

a.

In order to show causal connection, Nectoux is not required to show that "but for" his engaging in the protected activity he would not have been terminated, or that such activity was the sole factor motivating the termination. *See* **Evans v. City of Houston**, 246 F.3d 344, 354 (5th Cir. 2001). Nevertheless, Nectoux must demonstrate that there was a causal link.

Nectoux does not show how his complaint to management and his termination are causally connected. Accordingly, he has failed to establish a prima facie case of retaliation.

b.

Alternatively, even if Nectoux established a prima facie case, he has not shown that the proffered reason for his termination is pretextual.

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**

7